IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KEVIN DARELL BILLIOUPS, ) | |
| ) | |
| Plaintiff ) | Case No. 3:11-cv-436 |
| ) | Judge Trauger/Brown |
| v. ) | |
| ) | |
| METROPOLITAN GOVERNMENT OF ) | |
| NASHVILLE AND DAVIDSON COUNTY, ) | |
| TENNESSEE, SGT. SHEILA STINSON ) | |
| and LT. THOMAS WALKER, ) | |
| ) | |
| Defendants. ) | |

**TO: THE HONORABLE ALETA A. TRAUGER**

**REPORT AND RECOMMENDATION**

Presently pending before the Magistrate Judge is Defendants' Motion for Summary Judgement, filed January 27, 2012. (Docket Entry 56). In support of said motion, Defendants also filed a statement of undisputed facts and supporting memorandum. (Docket Entries 57, 58). Plaintiff has not filed a response, and is now well beyond the 28-day response deadline ordered by the Magistrate Judge. (Docket Entry 50).

For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgement be **GRANTED** and all of Plaintiff's claims **DISMISSED**.

**I. PROCEDURAL HISTORY**

This case commenced on May 9, 2011, when Plaintiff, an inmate of the Tennessee Department of Correction proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. §1983 alleging violations of his constitutional rights. The Plaintiff is housed at the Davidson County

1

Criminal Justice Center ("CJC"), a facility of the Davidson County Sheriff's Office ("DCSO"). Plaintiff's complaint originally asserted claims against the Metropolitan Government of Nashville and Davidson County ("Metropolitan Government"), Sgt. Sheila Stinson, and Lt. Thomas Walker. (Docket Entry 1). On July 20, 2011, Defendants' counsel responded to Plaintiff's claims by filing answers on behalf of Metropolitan Government and Sgt. Stinson, (Docket Entries 17, 18) and by filing a Motion to Dismiss on behalf of Lt. Walker. (Docket Entry 15). The Magistrate Judge filed a report recommending that said motion be granted. (Docket Entry 19). On September 13, 2011, this Court adopted the Magistrate's report and dismissed all claims against Lt. Thomas Walker. (Docket Entry 26). Defendants' now-pending motion applies only to claims against Metropolitan Government and Sgt. Stinson.

On December 14, 2011, the Magistrate Judge filed an order denying Plaintiff's motion to amend his complaint. (Docket Entry 41). January 25, 2012, this Court denied Plaintiff's motion for reconsideration and affirmed the Magistrate Judge's decision. (Docket Entry 53).

On January 27, 2012, Defendants' filed the pending Motion for Summary Judgement. (Docket Entry 56). Defendants' also filed a statement of undisputed facts and supporting memorandum. (Docket Entries 57, 58). Attachments filed with the statement of facts contain Plaintiff's deposition excerpts; affidavits of Dan Weikal, CJC Administrator; Plaintiff's signed DSCO Inmate Grievance Form; and portions of DSCO Policy. (Docket Entry 57, Attachments 1-7).

Plaintiff has not filed a response, and is now beyond the 28-day response deadline ordered by the Magistrate Judge. (Docket Entry 50). Noting Plaintiff's *pro se* status, the Magistrate Judge has delayed in writing this report so as to give Plaintiff extra time beyond the deadline. Now, the

2

Magistrate Judge will consider Defendants' Motion for Summary Judgement without the benefit of a response from Plaintiff.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must show there is "no genuine issue as to any material fact," and for this reason, the material presented must be viewed in a "light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248.

The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). If the non-moving party fails to do so, then summary judgment, if appropriate, should be granted for the moving party. *Id.* Still, "a party is never required to respond to a motion for summary

3

judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant." *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979). The movant retains the burden of establishing that "the moving party is entitled to judgment as a matter of law," even if the non-moving party fails to respond. Fed. R. Civ. P. 56(c).

Applying these standards to the case at bar, the Magistrate Judge notes that Plaintiff failed to satisfy his procedural burden pursuant to Local Rule 56.01(c), which requires a specific response to each fact set forth in Defendants' statement of undisputed material facts that accompanied their motion to dismiss. (Docket Entry 57). According to Local Rule 56.01(g), such failure to respond "shall indicate that the asserted facts are not disputed for purposes of summary judgment." *See also Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (noting that, in the absence of a response to a dispositive motion, "a court's reliance on the facts advanced by the movant is proper and sufficient."). While the Magistrate Judge typically shows leniency with regard to *pro se* parties and strict procedural standards, the Plaintiff in this case has not even attempted to respond to the pending motion. The Magistrate Judge sees no reason why Defendants' version of the facts would be disputed and, therefore, adopts Defendants' statement of facts as true.

### III. LEGAL ANALYSIS

Plaintiff's complaint essentially concerns Sgt. Stinson's confiscation of three, one-serving butter packets from his cell. Plaintiff asserts that "Sgt. Stinson seems to only target, discriminate, and harass" people of certain religious and eating practices–including Plaintiff himself. While the complaint does not cite constitutional provisions, Plaintiff's §1983 action apparently stems from his allegation that Sgt. Stinson "has constantly harassed and discriminated against me and/or my religion and other religions outside of Christianity[.]" (Docket Entry 1, p. 4).

4

The Magistrate Judge believes there are numerous reasons why summary judgment must be granted and all of Plaintiff's claims dismissed.

A.      Plaintiff Failed to Exhaust Administrative Remedies

Under 42 U.S.C. § 1997(e)(a), as amended by the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action with respect to prison conditions, under §1983 or any other federal law, until available administrative remedies are exhausted. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). The exhaustion requirement is applicable "to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" *Porter*, 534 U.S. at 532. "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally[.]" *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

Here, Defendants have thoroughly detailed why Plaintiff failed to exhaust the administrative remedies available to him.[1] Plaintiff filed a grievance against Sgt. Stinson concerning the confiscation of butter packets from his cell and, less than a month later, Plaintiff received a response explaining why his grievance was unsustained. (Docket Entry 57-3, p. 1-3). Plaintiff did not appeal the response, even though he clearly had the right to appeal per the Grievance Policy that CJC inmates are given upon their incarceration. (Docket Entry 57-2, p.2). The appeal process is also mentioned on the very Grievance Form that Plaintiff submitted. (Docket Entry 57-3, p. 1). Plaintiff failed to

---

[1] Failure to exhaust administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 216.

exhaust his available administrative remedies before filing this action in federal court. As such, Plaintiff's action must be dismissed.

B.  Plaintiff's Claims Against the Metropolitan Government Fail as a Matter Of Law

Under §1983, "municipalities and other local government units" are among the "persons" to whom the statute applies. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). To prevail on a claim of municipal liability under § 1983, a plaintiff must establish: 1) that he was deprived of a constitutional right; 2) that the municipality had a "policy"; and 3) that the policy was "the moving force" behind the constitutional violation. *Monell*, 436 U.S. at 658; *See O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994). As a rule, a local government entity may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

The Plaintiff does not specifically allege any wrongdoing by the Metropolitan Government in this case. Even when noting Plaintiff's *pro se* status and reading his complaint in the most favorable light, the Magistrate Judge believes that the only plausible base of Metropolitan Government liability stems from an alleged failure to "monitor [Sgt. Stinson] during her entire shift, to perhaps catch her loud talking, sarcastic, & profane language toward us as a whole." (Docket Entry 1, p. 4). Of course, any claim of liability against the Metropolitan Government based on Sgt. Stinson and a *respondeat superior* theory must fail as a matter of law. The only way Plaintiff can prevail against the Metropolitan Government is by establishing that an officially executed policy or toleration of a custom lead to, caused, or resulted in the deprivation of his constitutionally protected rights. *See*

*Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996); *see also Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).  The Plaintiff offers no evidence whatsoever that could clear such a hurdle. He remains silent as to Defendants' assertion that it is "the policy and custom of the DSCO to have unauthorized items found in the cell areas of the CJC confiscated without regard to the religious preferences of the inmates in the cell." (Docket Entry 57-2, p. 3).  In fact, Plaintiff barely mentions the Metropolitan Government, let alone any custom or policy promoting constitutional violations.  The Magistrate Judge believes that Plaintiff presents no legal basis for claims against the Metropolitan Government and, as such, they must fail as a matter of law.

C.        Even If Sued In Her Individual Capacity, Sgt. Stinson Is Entitled to Qualified Immunity

The Magistrate Judge notes that Plaintiff does not indicate whether Sgt. Stinson is sued in an official or individual capacity.  Normally, failure to designate such capacity means that claims would proceed against Sgt. Stinson in her official capacity.  A claim for damages against a state or municipal officer in her official capacity is the equivalent of an action against the governmental entity she represents. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992).  Per the same reasoning applied to the claims against Metropolitan Government, discussed *supra*, Plaintiff's claims against Sgt. Stinson in her official capacity must fail.

Further–even assuming, *arguendo*, that Plaintiff alleges colorable constitutional violations by Sgt. Stinson in her individual capacity–the Magistrate Judge believes that summary judgment is appropriate because Sgt. Stinson is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

7

would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, "the plaintiff bears the burden of demonstrating that the [defendant] is not entitled to that defense." *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir 2009)). "Determinations of qualified immunity require the Court to answer two questions: (1) whether the [defendant] violated a constitutional right, and (2) whether that right was clearly established in light of the specific context of the case." *Brown v. City of Franklin*, No: 3-10-1146, 2011 WL 2971092, at *2 (M.D. Tenn. July 20, 2011) (citing *Hayden*, 640 F.3d at 153). Assuming a constitutional right was violated, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Put differently, if reasonable officials could disagree about the issue, then immunity should be recognized. *Armstrong v. City of Melvindale*, 432 F.3d 695, 701 (6th Cir. 2006) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Turning to the facts in this case, the Magistrate Judge believes that reasonable officers could disagree that Sgt. Stinson's conduct was unlawful. By Plaintiff's own admission, the only items Sgt. Stinson removed from his cell were the butter packets. (Docket Entry 57-1, p. 8). Plaintiff also testified that Sgt. Stinson left his cell and proceeded to remove a non-kosher drink bottle from another inmate's cell. (*Id*., p. 10). In short, both these actions by Sgt. Stinson were "appropriate." (Docket Entry 57-2, p. 3). The Magistrate Judge believes that reasonable CSC officers could think it lawful to act like Sgt. Stinson, which the Administrator of the CJC described as "consistent with the policy and custom of the DCSO to not discriminate on the basis

8

of religion when she confiscated kosher butter packets and a non-kosher cold drink bottle." *Id*. Moreover, even assuming Sgt. Stinson's actions did violate Plaintiff's constitutional rights, Plaintiff offers no evidence that Sgt. Stinson's removal of unauthorized butter packets was the type of discriminatory action that reasonable officers would deem to be clearly unlawful. Plaintiff has not satisfied his burden of demonstrating that Sgt. Stinson is not entitled to qualified immunity and, as such, the claims against Sgt. Stinson must be dismissed as a matter of law.

## IV. CONCLUSION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 56) be **GRANTED** and all of Plaintiff's claims **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 27th day of February, 2012.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge